No. 22-1127(L), 22-1135

In the
United States Court of Appeals
for the Fourth Circuit

IN RE: BESTWALL LLC,

*Debtor*,

BESTWALL LLC; GEORGIA-PACIFIC LLC,

*Plaintiffs-Appellees,*

v.

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS; SANDER L.
ESSERMAN, IN HIS CAPACITY AS FUTURE CLAIMANTS'
REPRESENTATIVE,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the Western District of North Carolina

**AMICUS BRIEF OF THE STATES OF NORTH CAROLINA, ARIZONA,
COLORADO, CONNECTICUT, DELAWARE, ILLINOIS, MAINE,
MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSISSIPPI, NEVADA,
NEW JERSEY, NEW MEXICO, NEW YORK, NORTH DAKOTA, OREGON,
PENNSYLVANIA, VERMONT, WASHINGTON AND THE DISTRICT OF
COLUMBIA IN SUPPORT OF PETITION FOR REHEARING EN BANC**

JOSHUA H. STEIN
Attorney General

Ryan Y. Park
Solicitor General

James W. Doggett
Deputy Solicitor General

Daniel Mosteller
Deputy General Counsel

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

*Counsel for Amicus Curiae State of North Carolina and the Amici States*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................ii

INTEREST OF AMICI CURIAE......................................................1

INTRODUCTION..............................................................................2

REASONS FOR GRANTING THE PETITION.........................3

    I.    The Panel's Decision Undermines the States' Critical
           Role in Protecting Consumers. ...............................................3

          A.    The "Texas Two-Step" allows wealthy companies
               to limit liability for their torts. ....................................3

          B.    The panel's holding will make this Circuit a
               haven for the Texas Two-Step. .....................................5

          C.    Using the Texas Two-Step to initiate bankruptcy
               proceedings causes significant harm to States'
               sovereign power to enforce their laws. ..........................7

    II.    The Panel Erred by Shielding Reorganized Georgia-
           Pacific from Litigation. ............................................................10

          A.    The panel erred by affirming an injunction
               premised on an attempt to manufacture
               jurisdiction. ...................................................................11

          B.    The panel erred by affirming an injunction issued
               without jurisdiction....................................................13

CONCLUSION ....................................................................................15

CERTIFICATE OF SERVICE.........................................................18

CERTIFICATE OF COMPLIANCE...............................................19

# TABLE OF AUTHORITIES

## Federal Cases

*A.H. Robins Co. v. Piccinin*,
    788 F.2d 994 (4th Cir. 1986) ..................................................... 12, 13

*In re Aearo Techs. LLC*,
    642 B.R. 891 (Bankr. S.D. Ind. 2022) ............................................ 4

*In re DBMP LLC*,
    Adv. Pro. No. 20-03004, 2021 WL 3552350
    (Bankr. W.D.N.C. Aug. 11, 2021) ................................................... 4

*In re LTL Mgmt. LLC*,
    No. 21-30589, 2021 WL 5343945
    (Bankr. W.D.N.C. Nov. 16, 2021) ................................................... 6

*In re LTL Mgmt., LLC*,
    64 F.4th 84 (3d Cir. 2023) .......................................................... 3, 4

*In re Purdue Pharma, L.P.*,
    69 F.4th 45 (2d Cir. 2023) .......................................................... 9, 10

*LTL Mgmt., LLC v. New Mexico (In re LTL Mgmt., LLC)*,
    645 B.R. 59 (Bankr. D.N.J. 2022) ................................................. 7, 8

*New Horizon of N.Y. LLC v. Jacobs*,
    231 F.3d 143 (4th Cir. 2000) ........................................................ 14

*West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*,
    646 F.3d 169 (4th Cir. 2011) ......................................................... 8

## Federal Statutes

11 U.S.C. § 362 ................................................................................ 8

11 U.S.C. § 363 ................................................................................ 6

11 U.S.C. § 503 ................................................................................ 6

ii

28 U.S.C. § 1334 ........................................................................... 11

28 U.S.C. § 1359 ...................................................................... 11, 13

## Federal Rules

Fed. R. App. P. 29 ........................................................................... 1

Fed. R. App. P. 35 ........................................................................... 2

## Other Authorities

Michael A. Francus,
    *Texas Two-Stepping Out of Bankruptcy*,
    120 Mich. L. Rev. Online 38 (2022) ................................................. 4

Mtn. for Prelim. Inj., *Purdue Pharma L.P. v. Massachusetts
    (In re Purdue Pharma L.P.)*,
    Adv. Pro. No. 19-08289 (Doc. 2)
    (Bankr. S.D.N.Y. Sept. 18, 2019) .................................................... 7

Press Release, N.C. Dep't of Justice,
    Bipartisan Coalition of Attorneys General Secures More
    Than $10 Billion in Opioid Funds from CVS and Walgreens:
    Brings total recoveries from drug industry to more than
    $50 billion (Dec. 12, 2022) ............................................................ 9

Charles Alan Wright & Arthur R. Miller,
    *Federal Practice and Procedure* (3d ed.) ...................................... 11

## INTEREST OF AMICI CURIAE

The amici States file this brief in support of Appellants' petition for rehearing en banc as permitted by Fed. R. App. P. 29(b)(2). The panel's decision allows wealthy tortfeasor corporations to abuse the bankruptcy process to limit liability for the harms they have caused to the States and their people. In fact, the device used by the Appellees has already been exploited by other wealthy corporations to enjoin claims by States. To preserve their authority to enforce their state laws to protect their people, the amici States therefore have a strong interest in supporting Appellants' petition.

## INTRODUCTION

The amici States agree with Appellants that this case presents questions of exceptional importance that this Court should rehear en banc. Fed. R. App. P. 35(a)(2). This case involves a scheme known as the "Texas Two-Step." This scheme is designed to allow highly solvent companies to improperly gain the benefits of the bankruptcy process without having to face its corresponding burdens. Specifically, it allows wealthy companies to access the Bankruptcy Code's coercive, nonconsensual tools for global resolution of mass tort liabilities— including injunctions against tort claims filed in state court—but remain free from the burdens of having their operations subject to bankruptcy court oversight.

The panel effectively blessed this attempted manipulation of the bankruptcy process—making this Court the first federal appellate court to do so. This decision threatens States' sovereign power to enforce their laws against corporate wrongdoers. It also violates the statutory bar on manufacturing federal jurisdiction as well as statutory limits on bankruptcy jurisdiction. This Court should grant rehearing en banc to reconsider these erroneous rulings.

## REASONS FOR GRANTING THE PETITION

I.  **The Panel's Decision Undermines the States' Critical Role in Protecting Consumers.**

    A.  **The "Texas Two-Step" allows wealthy companies to limit liability for their torts.**

This appeal is about a scheme known as the "Texas Two-Step." The scheme's first step uses Texas corporate law to effectuate a "divisional merger" that assigns a highly solvent company's tort liability to another entity that is separate from the bulk of its ongoing operations. *See In re LTL Mgmt., LLC*, 64 F.4th 84, 95-97 (3d Cir. 2023). At the second step, the entity holding the tort liability files for bankruptcy, leaving the other entity with the bulk of the company's operations unencumbered by the bankruptcy process. *See id.* at 97.

In this way, the Texas Two-Step allows wealthy companies to limit liability for torts that they committed. As the Third Circuit recently explained in a case involving Johnson & Johnson's use of the Texas Two-Step to limit liability arising from talc-containing products, the scheme's "stated goal [is] to isolate the [mass tort] liabilities in a new subsidiary so that entity [can] file for Chapter 11 without subjecting [its] entire operating enterprise to bankruptcy." *Id.* at 93. This maneuver seeks to "provide . . . [a tortfeasor] with additional

leverage to negotiate a global settlement" with plaintiffs—leverage that it could not achieve if it were required to litigate the claims in an Article III federal court or state court. *In re Aearo Techs. LLC*, 642 B.R. 891, 912 (Bankr. S.D. Ind. 2022), *appeal pending*, No. 22-2606 (7th Cir.).

Courts and commentators have sharply questioned the legality of wealthy businesses leveraging Texas law like this in bankruptcy proceedings. For example, the Western District of North Carolina Bankruptcy Court has noted its "concerns about the propriety of what [another company] wrought in" executing a scheme of this kind. *In re DBMP LLC*, Adv. Pro. No. 20-03004, 2021 WL 3552350, at *43 (Bankr. W.D.N.C. Aug. 11, 2021); *see also* Michael A. Francus, *Texas Two-Stepping Out of Bankruptcy*, 120 Mich. L. Rev. Online 38, 43 (2022) (arguing that such use of the Texas Two-Step "fits the textbook definition" of a fraudulent transfer). In another example, the Third Circuit recently dismissed Johnson & Johnson's Texas Two-Step bankruptcy for lack of good faith. *LTL*, 64 F.4th at 106-10. Specifically, the court held that the company did not file for bankruptcy in good faith because it was not in financial distress. *Id.* at 110.

**B.    The panel's holding will make this Circuit a haven for the Texas Two-Step.**

While it did not rule on whether the Texas Two-Step is a lawful way to initiate bankruptcy, *see* slip op. 5 n.1, the panel's jurisdictional holding will have the practical effect of ensuring that Texas Two-Step bankruptcies continue in this Circuit. This Court should rehear this case en banc to prevent tortfeasors from using this Circuit's case law to limit liability for their misconduct by manipulating the bankruptcy process.

The Texas Two-Step achieves its aim only if the solvent entity with the bulk of ongoing operations obtains a preliminary injunction from a bankruptcy court that stops tort litigation against it. As the panel acknowledged, failing to obtain a preliminary injunction shielding the reorganized Georgia-Pacific from tort claims would have "render[ed] the bankruptcy futile." Slip op. at 9.

Once the injunction is in place, the tortfeasor has limited incentive to resolve the claims against it. After all, the injunction protects the company from litigation that could lead to adverse judgments negatively affecting the company's global settlement position. And unlike a bankrupt company, the solvent entity created by the Texas

Two-Step is free from the burdens of having its operations subject to oversight by the bankruptcy court. *See, e.g.*, 11 U.S.C. § 363(b)(1) (requiring oversight of bankrupt companies' use, sale, or lease of property not in the ordinary course of business); *id*. § 503(c) (requiring oversight of bankrupt companies' compensation of certain executives). Thus, for as long as the bankruptcy remains pending, the tortfeasor is effectively insulated from liability without pressure to exit bankruptcy and regain control of its operations.

The panel's decision permitting the bankruptcy court to exercise jurisdiction to enter a preliminary injunction under these circumstances will only reinforce a concerning trend: The Fourth Circuit is the venue of choice for the Texas Two-Step. Indeed, "every debtor using the Texas Two Step filed for bankruptcy in [the Western] [D]istrict [of North Carolina]." *In re LTL Mgmt. LLC*, No. 21-30589, 2021 WL 5343945, at *6 (Bankr. W.D.N.C. Nov. 16, 2021). This has been possible because, no matter where a corporation is based, a Texas Two-Step can create a new entity formally domiciled in North Carolina that can seek bankruptcy in this Circuit. *See id*.

6

If it stands, the panel's jurisdictional ruling will only further entrench this Circuit as the venue of choice for the Texas Two-Step. This broad effect on the Circuit's operations underscores the need for this Court to consider the issues in this case en banc.

### C. Using the Texas Two-Step to initiate bankruptcy proceedings causes significant harm to States' sovereign power to enforce their laws.

Critically, the panel's jurisdictional ruling in this case wrongly threatens amici States' sovereign power to enforce their civil consumer-protection and other laws.

In recent years, corporate wrongdoers have increasingly filed for bankruptcy and quickly sought preliminary injunctions barring State litigation against non-bankrupt related entities. *See, e.g.*, Mtn. for Prelim. Inj., *Purdue Pharma L.P. v. Massachusetts (In re Purdue Pharma L.P.)*, Adv. Pro. No. 19-08289 (Doc. 2) (Bankr. S.D.N.Y. Sept. 18, 2019) (seeking preliminary injunction of States' civil litigation against non-bankrupt Sackler family that owned bankrupt Purdue Pharma). Indeed, Johnson & Johnson successfully used this maneuver after employing the Texas Two-Step to preliminarily enjoin Mississippi and New Mexico from pursuing claims against it. *LTL Mgmt., LLC v.*

*New Mexico (In re LTL Mgmt., LLC)*, 645 B.R. 59, 76 n.11, 87 (Bankr. D.N.J. 2022).[1]

The panel's decision thus allows a non-Article III federal bankruptcy court to effectively overrule a State's sovereign decision to seek redress against a non-bankrupt company in its own state court. But as this Court has held, States have inherent sovereign authority to enforce their own regulatory laws in their state courts: "Were [the federal courts] now to mandate that the State was not entitled to pursue its action in its own courts, we would risk trampling on the sovereign dignity of the State." *West Virginia ex rel. McGraw v. CVS Pharmacy, Inc.*, 646 F.3d 169, 178 (4th Cir. 2011).

The panel decision not only threatens States' sovereign right to choose whether and where to sue for violations of their civil laws. It also substantively harms States' sovereign interest in the timely

---

[1]     Mississippi and New Mexico were subject to this injunction even though the Bankruptcy Code exempts States' "police and regulatory power" from the automatic stay that the Code grants to bankrupt entities. 11 U.S.C. § 362(b)(4). Amici States maintain that rulings like *New Mexico* enjoining States from civil litigation against non-bankrupt entities are incorrectly decided given this exemption, among other reasons. That said, the issue of State authority in this area would not arise at all if not for the panel's erroneous jurisdictional holdings.

resolution of claims against corporate wrongdoers.  States regularly and successfully engage in direct negotiations with companies responsible for mass torts to efficiently resolve claims brought under state law. This relatively streamlined process contrasts sharply with the delays and roadblocks that States face when forced to resolve their claims through the bankruptcy process.

A particularly striking example of this phenomenon arose in the States' efforts to address the unlawful corporate conduct that gave rise to the opioid crisis.  In 2021 and 2022, States and local governments entered global settlements worth approximately $50 billion with nine companies that engaged in misconduct related to the manufacturing, distribution, and dispensing of opioids.[2]  Meanwhile, nearly four years of bankruptcy proceedings and related appeals still have not resolved the States' claims against opioid manufacturer Purdue Pharma and its owners, the Sackler family.  *See In re Purdue Pharma, L.P.*, 69 F.4th

---

[2]     *See* Press Release, N.C. Dep't of Justice, Bipartisan Coalition of Attorneys General Secures More Than $10 Billion in Opioid Funds from CVS and Walgreens: Brings total recoveries from drug industry to more than $50 billion (Dec. 12, 2022), https://ncdoj.gov/bipartisan-coalition-of-attorneys-general-secures-more-than-10-billion-in-opioid-funds-from-cvs-and-walgreens/.

45, 56-57, 60 (2d Cir. 2023). Similar to a Texas Two-Step bankruptcy, the non-bankrupt Sackler family sought to use the bankruptcy process to enjoin State enforcement litigation and obtain a nonconsensual global settlement. *See id.* at 60-61 (detailing nonconsensual releases benefiting the Sacklers).

If corporate tortfeasors are allowed to use a Texas Two-Step bankruptcy to protect themselves from States' civil enforcement litigation, they will have less incentive to negotiate with States for timely, mutually acceptable resolutions. Rehearing en banc is therefore warranted to ensure that States retain their sovereign authority to effectively enforce their laws against corporate wrongdoers.

## II. The Panel Erred by Shielding Reorganized Georgia-Pacific from Litigation.

This Court should also grant the petition because the panel erred by affirming the bankruptcy court's decision to enter an injunction shielding the reorganized Georgia-Pacific from litigation. The panel erred in two distinct ways. First, the injunction was based on wrongfully manufactured bankruptcy jurisdiction. Second, even under ordinary rules of bankruptcy jurisdiction, the bankruptcy court lacks jurisdiction over the claims against the reorganized Georgia-Pacific.

10

**A.     The panel erred by affirming an injunction premised on an attempt to manufacture jurisdiction.**

First, the bankruptcy court's injunction should have been reversed because it was premised on an attempt to fashion jurisdiction for the express purpose of supporting the injunction.

Under 28 U.S.C. § 1359, federal courts lack jurisdiction over civil actions where "any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." This statute and its predecessors date back to 1875, when Congress enacted it to stop corporations from using stock transactions and asset assignments to manufacture jurisdiction in the federal courts. *See* 7C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1830 (3d ed.).

Here, for Georgia-Pacific's Texas Two-Step to work, the reorganized Georgia-Pacific needed an injunction blocking litigation against it without becoming a debtor itself. *See supra* p 5. Thus, Georgia-Pacific devised a way to try to bring the reorganized Georgia-Pacific within the bankruptcy court's jurisdiction. Specifically, it relied on 28 U.S.C. § 1334, which authorizes bankruptcy courts to exercise jurisdiction over proceedings that are "related to" a bankruptcy case.

11

This form of jurisdiction reaches proceedings that could have an effect on a debtor's bankruptcy estate. *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1002 n.11 (4th Cir. 1986).

To try to manufacture such jurisdiction, Georgia-Pacific assigned its asbestos liabilities to a new successor, Bestwall, which then declared bankruptcy. Slip op. at 32 (King, J., dissenting). Georgia-Pacific also brokered contracts between Bestwall and the reorganized Georgia-Pacific "to create the appearance of their corporate relations being inextricably intertwined," such that litigation against the new Georgia-Pacific could be said to affect Bestwall's bankruptcy. *Id.* at 38 (King, J., dissenting). Without these steps, "there would have been no 'effects'" on Bestwall's bankruptcy that could have justified any injunction to protect the new Georgia-Pacific. *Id.* (King, J., dissenting). Thus, the jurisdictional basis for the injunction protecting the new Georgia-Pacific from asbestos claims arose only because the old Georgia-Pacific carefully structured the divisional merger to create them.[3]

---

[3]     There is no dispute that these considerations drove Georgia-Pacific's decision making: Bestwall admitted that the goal of the restructuring was to allow the reorganized Georgia-Pacific to shield itself from asbestos claims without declaring bankruptcy. Slip op. at 33, 38 (King, J., dissenting).

This kind of arrangement contravenes 28 U.S.C. § 1359, which prohibits using parties like Bestwall to improperly manufacture federal jurisdiction. The panel's erroneous endorsement of this practice warrants en banc review.

## B.  The panel erred by affirming an injunction issued without jurisdiction.

Second, rehearing is also warranted because Georgia-Pacific's attempt to confer jurisdiction on the bankruptcy court was unsuccessful: Asbestos claims against the reorganized Georgia-Pacific are not "related to" Bestwall's bankruptcy.

Lawsuits involving non-debtors like the new Georgia-Pacific can fall within a bankruptcy court's related-to jurisdiction where they might affect a debtor's bankruptcy estate. *See A.H. Robins*, 788 F.2d at 1002 n.11. Non-debtor lawsuits can do so, for example, if those lawsuits could result in funds being withdrawn from a debtor's estate, as might occur when a debtor's indemnification obligations could be triggered. *See id.* at 1007-08.

Here, however, while Bestwall has indemnification obligations to the reorganized Georgia-Pacific, *see* slip op. at 6, judgments against that entity could not drain any funds from Bestwall's estate. That is so

13

given the very unusual relationship between the new Georgia-Pacific and Bestwall. Like the dissent observed, Bestwall's indemnification obligations are "circular": If the reorganized Georgia-Pacific incurs costs that are subject to indemnification from Bestwall, Bestwall may request funds from that counterparty itself to satisfy Bestwall's indemnification obligations. *Id.* at 41 (King, J. dissenting). Given this arrangement, Bestwall's indemnification obligations cannot actually diminish or otherwise affect its bankruptcy estate. Those obligations thus provide no basis for related-to jurisdiction.

Despite this circular financial arrangement, the panel held that litigation involving the reorganized Georgia-Pacific could affect Bestwall's estate due to "issue preclusion, inconsistent liability, and evidentiary issues." *Id.* at 16. But those concerns provide no ground for related-to jurisdiction: This Court has already recognized, for instance, that the "mere fact that there may be common issues of fact between a civil proceeding and a controversy involving a bankruptcy estate" *does not* create related-to jurisdiction. *New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000).

14

Thus, the panel incorrectly held that claims against the new Georgia-Pacific are "related to" the bankruptcy case.  Rehearing en banc is warranted to correct that erroneous ruling.

## CONCLUSION

For the above reasons, the amici States respectfully submit that this Court should grant the petition for rehearing en banc.

Respectfully submitted,

JOSHUA H. STEIN
Attorney General

Ryan Y. Park
Solicitor General

James W. Doggett
Deputy Solicitor General

/s/ Daniel Mosteller
Daniel Mosteller
Deputy General Counsel

North Carolina Department of Justice
Post Office Box 629
Raleigh, North Carolina 27602
(919) 716-6400

July 12, 2023
(additional counsel listed below)

KRIS MAYES
*Attorney General*
*State of Arizona*
2005 N. Central Avenue
Phoenix, AZ 85004

PHILIP J. WEISER
*Attorney General*
*State of Colorado*
1300 Broadway
Denver, CO 80203

WILLIAM TONG
*Attorney General*
*State of Connecticut*
165 Capitol Avenue
Hartford, CT 06106

KATHLEEN JENNINGS
*Attorney General*
*State of Delaware*
820 N. French Street
Wilmington, DE 19801

KWAME RAOUL
*Attorney General*
*State of Illinois*
100 W. Randolph Street
Chicago, IL 60601

AARON M. FREY
*Attorney General*
*State of Maine*
6 State House Station
August, ME 04333

ANDREA JOY CAMPBELL
*Attorney General*
*Commonwealth of Massachusetts*
One Ashburton Place
Boston, MA 02108

DANA NESSEL
*Attorney General*
*State of Michigan*
P.O. Box 30212
Lansing, MI 48909

KEITH ELLISON
*Attorney General*
*State of Minnesota*
102 State Capitol
75 MLK Blvd.
St. Paul, MN 55155

LYNN FITCH
*Attorney General*
*State of Mississippi*
P.O. Box 220
Jackson, MS 39205

AARON D. FORD
*Attorney General*
*State of Nevada*
100 North Carson Street
Carson City, NV 89701

MATTHEW J. PLATKIN
*Attorney General*
*State of New Jersey*
25 Market Street
Trenton, NJ 08625

16

RAÚL TORREZ
*Attorney General*
*State of New Mexico*
201 3rd Street NW
Albuquerque, NM 87109

LETITIA JAMES
*Attorney General*
*State of New York*
28 Liberty Street
New York, NY 10005

DREW WRIGLEY
*Attorney General*
*State of North Dakota*
600 E. Boulevard Avenue
Bismarck, ND 58505

ELLEN F. ROSENBLUM
*Attorney General*
*State of Oregon*
1162 Court Street NE
Salem, OR 97301

MICHELLE A. HENRY
*Attorney General*
*Commonwealth of Pennsylvania*
Strawberry Square, 16th Floor
Harrisburg, PA 17120

CHARITY R. CLARK
*Attorney General*
*State of Vermont*
109 State Street
Montpelier, VT 05609

ROBERT W. FERGUSON
*Attorney General*
*State of Washington*
P.O. Box 40100
Olympia, WA 98504

BRIAN L. SCHWALB
*Attorney General*
*District of Columbia*
400 6th Street NW, Suite 8100
Washington, DC 20001

## CERTIFICATE OF SERVICE

I certify that on this 12th day of July, 2023, I filed the foregoing

brief with the Clerk of Court using the CM/ECF system, which will

automatically serve electronic copies on all counsel of record.

/s/ Daniel Mosteller
Daniel Mosteller

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitations of Federal Rules of Appellate Procedure 29(b) because it contains 2,586 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32(a)(5) & (6) because it has been prepared in a 14-point, proportionally spaced typeface.

/s/ Daniel Mosteller
Daniel Mosteller