Nos. 22-1127(L), 22-1135

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

IN RE: BESTWALL LLC,

*Debtor*

BESTWALL LLC AND GEORGIA-PACIFIC LLC,
*Plaintiffs-Appellees*

v.

OFFICIAL COMMITTEE OF ASBESTOS CLAIMANTS AND SANDER L. ESSERMAN,
IN HIS CAPACITY AS FUTURE CLAIMANTS' REPRESENTATIVE,

*Defendants-Appellants*

On Appeal from the United States District Court
for the Western District of North Carolina

BRIEF OF *AMICI CURIAE* THE CHAMBER OF COMMERCE OF THE UNITED STATES OF AMERICA AND THE AMERICAN TORT REFORM ASSOCIATION IN SUPPORT OF DEBTOR AND PLAINTIFFS-APPELLEES AND IN OPPOSITION TO REHEARING *EN BANC*

Tara S. Morrissey
Janet Galeria
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, D.C. 20062

Lauren Sheets Jarrell
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Ave NW, Suite 400
Washington, D.C. 20036

R. Craig Martin
DLA PIPER LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

Ilana H. Eisenstein
*Counsel of Record*
DLA PIPER LLP (US)
1650 Market Street, Suite 5000
Philadelphia, PA 19103
Tel: 215.656.3351
ilana.eisenstein@dlapiper.com

Richard A. Chesley
DLA PIPER LLP (US)
444 West Lake Street, Suite 900
Chicago, IL 60606-0089

*Counsel for* Amici Curiae *the Chamber of Commerce of the United States of America and the American Tort Reform Association*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 22-1127; 22-1135    Caption: Bestwall, LLC v. Official Committee of Asbestos Claimants

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Chamber of Commerce of the United States of America
(name of party/amicus)

who is _____ Amicus _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO

2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

12/01/2019 SCC                                - 1 -

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☐NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑YES ☐NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: _____    Date:
_____
7/24/2023

Counsel for: The Chamber of Commerce of the United States of America

- 2 -

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.


No. 22-1127; 22-1135      Caption: Bestwall, LLC v. Official Committee of Asbestos Claimants

Pursuant to FRAP 26.1 and Local Rule 26.1,

American  Tort Reform Association
(name of party/amicus)


who is _____ Amicus _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐YES ☑NO


2.    Does party/amicus have any parent corporations?    ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:


3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐YES ☑NO
      If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                   ☐YES ☑NO
     If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)   ☐YES ☐NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                    ☑YES ☐NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.

7.   Is this a criminal case in which there was an organizational victim?    ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.

Signature: _____     Date: _7/24/2023_____

Counsel for: American Tort Reform Association

# **TABLE OF CONTENTS**

INTEREST OF *AMICI CURIAE* ............................................................... 1

SUMMARY OF ARGUMENT ............................................................... 3

ARGUMENT ............................................................................................ 4

I.     BANKRUPTCY IS AN EFFECTIVE AND EFFICIENT WAY OF ADDRESSING MASS TORT LITIGATION CLAIMS. .................... 4

     A.     The Debtor's Chapter 11 Filing Has a Recognized Bankruptcy Purpose. ...................................................................... 4

     B.     State Sovereign Interests Are Not Undermined by the Majority's Decision. ............................................................. 8

II.     NARROWING THE SCOPE OF BANKRUPTCY JURISDICTION WOULD UNDERMINE THE PURPOSES OF CHAPTER 11 ......... 10

CONCLUSION ...................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.H. Robins Co., Inc. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) ........................................................................4, 5

*Celotex Corp. v. Edwards*,
  514 U.S. 300 (1995) .......................................................................................11

*Cent. Virginia Cmty. Coll. v. Katz*,
  546 U.S. 356 (2006) .......................................................................................10

*In re Dow Corning Corp.*,
  215 B.R. 346 (Bankr. E.D. Mich.) .................................................................8

*In re Fed.-Mogul Glob. Inc.*,
  684 F.3d 355 (3d Cir. 2012) ........................................................................5, 6

*In re French*,
  440 F.3d 145 (4th Cir. 2006) ..........................................................................9

*LTL Mgmt., LLC v. New Mexico (In re LTL Mgmt., LLC)*,
  645 B.R. 59 (Bankr. D.N.J. 2022) .................................................................10

*Moses v. CashCall, Inc.*,
  781 F.3d 63 (4th Cir. 2015) ...........................................................................11

**Statutes**

15 Pa. C.S. § 361 ...............................................................................................12

11 U.S.C. § 362 ...............................................................................................4, 9

11 U.S.C. § 524 .................................................................................................5

28 U.S.C. § 157 .................................................................................................8

28 U.S.C. § 1334 .............................................................................................11

28 U.S.C. § 1359 .............................................................................................11

28 U.S.C. § 1411 ................................................................................8

Ariz. Rev. Stat. Ann. § 29-2601 .....................................................12

Del. Code Ann. tit. 6, § 18-217 .......................................................12

**Other Authorities**

Fed. R. Bankr. P. 4001 ...................................................................10

Fed. R. Bankr. P. 7001 .....................................................................5

Fed. R. Bankr. P. 7065 .....................................................................5

3 Collier on Bankruptcy ¶ 362.05 (16th 2023) ...............................9

Curtis W. Huff, *The New Texas Business Corporation Act Merger
    Provisions*, 21 St. Mary's L.J. 109, 110 (1989) ...............................12

Mark A. Behrens, *Asbestos Trust Transparency*,
    87 Fordham. L. Rev. 107 (2018) ......................................................6

Sheldon S. Toll, *Bankruptcy and Mass Torts: The Commission's
    Proposal*, 5 Am. Bankr. Inst. L. Rev. 363 (1997) ............................6

U.S. Chamber of Commerce Institute for Legal Reform, *Unlocking the
    Code: The Value of Bankruptcy to Resolve Mass Torts* (Dec. 2022) ...............12

**INTEREST OF *AMICI CURIAE***

The Chamber of Commerce of the United States of America (the "Chamber") is the world's largest business federation. It directly represents 300,000 members and indirectly represents the interests of more than three million companies and professional organizations of every size, in each industry sector, and from every region of the country. An important function of the Chamber is representing the interests of its members before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files *amicus curiae* briefs in cases, like this one, that raise issues of concern to the nation's business community.

The American Tort Reform Association ("ATRA") is a broad-based coalition of businesses, corporations, municipalities, associations, and professional firms that have pooled their resources to promote reform of the civil justice system with the goal of ensuring fairness, balance, and predictability in civil litigation. For more than three decades, ATRA has filed *amicus* briefs in cases involving important liability issues.

Many of *amici*'s members participate in bankruptcy proceedings in different capacities. Therefore, *amici* have a strong interest in the appropriate interpretation of bankruptcy court powers and the ability of businesses to address mass tort liabilities under U.S. bankruptcy law, including the scope of bankruptcy jurisdiction.

1

No party's counsel authored this brief in whole or in part, and no entity or person, other than *amici*, their members, or their counsel, made any monetary contribution intended to fund the preparation or submission of this brief.

## SUMMARY OF ARGUMENT

Complex mass tort bankruptcies often involve third parties, including debtor companies' predecessors and successors in interest, suppliers, customers, and corporate affiliates. Compensation systems established through bankruptcy allow claimants to receive timely payments rather than having to pursue lengthy litigation against multiple defendants. The bankruptcy system has a long history of effectively managing the extraordinary costs and inefficiencies of mass tort litigation that may bankrupt a company. It maximizes the funds available to claimants and serves the U.S. economy in positive ways.

The use of bankruptcy to address mass tort claims, and particularly asbestos claims, is a historically valid bankruptcy purpose. To further that purpose, Congress granted the bankruptcy courts broad jurisdiction to ensure that all matters relating to a debtor's estate are handled in one forum to avoid the piecemeal dismemberment of the estate and to effectuate an orderly administration of claims. Given this breadth, a debtor's pre-petition business reorganization through the use of applicable corporate law should not be viewed as an attempt to manufacture jurisdiction. Rather, these actions are often the best way for businesses to address overwhelming tort liability while continuing to contribute to society.

3

**ARGUMENT**

## I. BANKRUPTCY IS AN EFFECTIVE AND EFFICIENT WAY OF ADDRESSING MASS TORT LITIGATION CLAIMS.

### A. The Debtor's Chapter 11 Filing Has a Recognized Bankruptcy Purpose.

One proper use of chapter 11 proceedings is to equitably address present and future liabilities associated with mass tort claims. Several provisions of the Bankruptcy Code empower bankruptcy courts to efficiently resolve such liabilities.

To start, the automatic stay provisions in 11 U.S.C. § 362(a)(1) and (3) protect both debtors and non-debtor third parties from collateral litigation that jeopardizes either the debtor or the property of the estate. As this Court has held, section 362(a)(1) automatically stays related litigation "when there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real-party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," such as "a suit against a third-party who is entitled to absolute indemnity by the debtor." *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986). And section 362(a)(3) stays "any act to obtain possession of property of . . . or . . . from the estate or to exercise control over property of the estate." Because property of the estate includes insurance policies assigned to the Debtor (*cf.* Op. at 5 n.2), a related action that "may diminish this 'important asset' is unquestionably subject to a stay" under section 362(a)(3). 788 F.2d at 1001 (citation omitted).

4

Similarly, section 105(a) of the Bankruptcy Code empowers bankruptcy courts to "issue any order, process or judgment that is necessary or appropriate to" sustain a reorganization. Bankruptcy courts have the power to issue preliminary injunctions in adversary proceedings over which they have jurisdiction. *See* Fed. R. Bankr. P. 7001 and 7065. These provisions ensure that bankruptcy courts "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]" and may "'enjoin parties other than the bankrupt' from commencing or continuing litigation." *A.H. Robins*, 788 F.2d at 1002.

The peculiar complexities of mass asbestos litigation led Congress to enact specific legislation to address asbestos bankruptcies. As part of the Bankruptcy Reform Act of 1994, Congress enacted legislation, codified in 11 U.S.C. § 524(g), to deal with asbestos mass tort claims in chapter 11 reorganizations. Section 524(g) ensures that the interests of claimants are protected while "simultaneously enabling corporations saddled with asbestos liability to obtain the 'fresh start' promised by bankruptcy" in order to "remedy[] some of the intractable pathologies of asbestos litigation." *In re Fed.-Mogul Glob. Inc.*, 684 F.3d 355, 359, 362 (3d Cir. 2012). Section 524(g) "affirm[s] what Chapter 11 reorganization is supposed to be about: allowing an otherwise viable business to quantify, consolidate, and manage its debt so that it can satisfy its creditors to the maximum extent feasible, but without

5

threatening its continued existence and the thousands of jobs that it provides." *Id.* at 359 n.8 (quoting 140 Cong. Rec. 28,358 (1994) (statement of Sen. Brown)).

Within a few years of the Act's passage, "[a]t least 15 asbestos manufacturers, including UNR, Amatex, Johns-Manville, National Gypsum, Eagle-Picher, Celotex, and Raytech . . . organized or liquidated in attempts to address massive numbers of known and unknown asbestos claimants using Chapter 11 of the Bankruptcy Code." Sheldon S. Toll, *Bankruptcy and Mass Torts: The Commission's Proposal*, 5 Am. Bankr. Inst. L. Rev. 364 n.8 (1997) (citing NAT'L BANKR. REV. COMM'N, BANKRUPTCY: THE NEXT TWENTY YEARS, FINAL REPORT at 315 (1997)). For decades, businesses facing mass tort claims have filed chapter 11 petitions to address those liabilities and the courts have consistently permitted them to do so. As a result of these bankruptcy filings, millions of people have received compensation for their claims, often in a prompt and efficient manner, while at the same time preserving the beneficial aspects of those businesses. Indeed, as of 2018 there are more than 60 asbestos trusts in operation, holding billions of dollars to "compensate claimants expeditiously at minimal cost." Mark A. Behrens, *Asbestos Trust Transparency*, 87 Fordham. L. Rev. 107, 111-12 (2018).

The Debtor's use of chapter 11 protections in this case is in line with the purposes of the Bankruptcy Code, ensuring that claims will be managed within the orderly system established by Congress while preserving a business's useful assets.

Facing tens of thousands of asbestos claims, Georgia-Pacific LLP ("Old GP") entered into a restructuring that included a divisional merger permitted under Texas state law. Following that divisional merger, Old GP "ceased to exist, and its assets and liabilities were divided between two new entities as wholly owned subsidiaries of Georgia-Pacific Holdings, LLC: Bestwall and New GP." Op. at 5. Bestwall held the liability for the asbestos claims, but entered into various indemnity and other funding agreements with New GP.

When Bestwall declared bankruptcy, the bankruptcy court found it had "related to" jurisdiction to preliminarily enjoin asbestos litigation against New GP, where Petitioners conceded "that litigating the *same claims* in thousands of state-court cases, that will also be resolved within the Bestwall bankruptcy case, could have an effect on the Bestwall bankruptcy estate." Op. at 14-15. This conclusion was affirmed by the district court and by a majority panel of this Court "based on the specific circumstances of this case, including the involvement of thousands of identical claims against New GP and Bestwall and the fact that the claims against New GP are, or could be, pending in many state courts around the country." Op. at 16-17. Further, given New GP's indemnification agreement to "step in to provide funds to cover the indemnification only if Bestwall's subsidiaries' distributions were insufficient to cover its obligations," the panel majority noted, "[i]t is difficult to see

how this exchange of money with a debtor could *not* conceivably affect the bankruptcy estate." Op. at 16 n.13.

Concerns that the majority's decision will lead to inequitable outcomes are unfounded. The Bankruptcy Code contains numerous provisions specifically designed to protect the interests of claimants in asbestos reorganizations. As the majority aptly noted, concerns that claimants will be "adversely affected monetarily by the ongoing bankruptcy" are best raised "at plan confirmation, not by a purported jurisdictional challenge that really goes to the merits of the reorganization." Op. at 23. Similarly, any concerns about tort claims being subject to the bankruptcy process are also addressed by the Bankruptcy Code's specific provisions for personal injury and wrongful death claims. *See, e.g.*, *In re Dow Corning Corp.*, 215 B.R. 346, 353-54 (Bankr. E.D. Mich.), supplemented, 215 B.R. 526 (Bankr. E.D. Mich. 1997) (observing that after "many personal injury attorneys confronted the bankruptcy process . . . in the course of *Johns-Manville* and other asbestos bankruptcy cases," they "lobbied to exempt, to the extent possible, personal injury claims from adjustment in bankruptcy. Result: 28 U.S.C. § 157(b)(2)(B), (O), § 157(b)(5), and § 1411(a).").

## B. State Sovereign Interests Are Not Undermined by the Majority's Decision.

The concerns raised by States *amici* are especially unfounded. A broad conception of bankruptcy jurisdiction coupled with a stay on litigation against the

property of the Debtor's estate in no way "threatens States' sovereign power to enforce their laws against corporate wrongdoers." States Br. at 2, 7-10.

*First*, a State's exercise of its sovereign police power is expressly exempt from the automatic stay. *See* 11 U.S.C. § 362(b)(4). State sovereign prerogatives are thus unaffected by the Debtor's reorganization. This does not mean, however, that States may jump the queue ahead of other creditors to secure more favorable recoveries. Just like any other claimant, States cannot bypass the automatic stay simply by repackaging into consumer protection claims the very asbestos claims that led the Debtor into bankruptcy. *See* 3 Collier on Bankruptcy ¶ 362.05 (16th 2023) ("A governmental unit may pursue actions against the debtor or the estate, but it may not enforce a money judgment or seize or seek control over property of the estate without first obtaining relief from the stay.").

*Second*, the requirement that States may draw from a debtor's estate only through the bankruptcy system rests on sound policies designed "to forestall 'a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *In re French*, 440 F.3d 145, 155 (4th Cir. 2006) (Wilkinson, J., concurring) (citation omitted)). The States' stated desire to pursue consumer protection remedies against the Debtor's estate that are premised on "the same products, same time periods, same alleged injuries, and same evidence" as claims against the Debtor thus militates for—not against—a stay of

litigation. *See LTL Mgmt., LLC v. New Mexico (In re LTL Mgmt., LLC)*, 645 B.R. 59, 77 (Bankr. D.N.J. 2022). To the extent that any States *amici* have concerns that will manifest here—thus far, none have entered an appearance in the bankruptcy proceedings below—they could move for relief from the automatic stay. *See* Fed. R. Bankr. P. 4001. The States' concerns about the possible negative consequences of a reorganization are thus speculative, readily redressable through the ordinary operation of the Bankruptcy Code, and ultimately irrelevant to the jurisdictional questions before the Court.

*Third*, to the extent State sovereign rights are even implicated, they are waived insofar as bankruptcy jurisdiction is exercised to protect estate assets from dismemberment outside of chapter 11 proceedings. *See Cent. Va. Cmty. Coll. v. Katz*, 546 U.S. 356, 378 (2006) ("In ratifying the Bankruptcy Clause, the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts.").

## II.   NARROWING THE SCOPE OF BANKRUPTCY JURISDICTION WOULD UNDERMINE THE PURPOSES OF CHAPTER 11.

"Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (1984)). Bankruptcy

10

courts accordingly have "original and exclusive jurisdiction of all cases under title 11," including over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(a), (e). Together with the grant of "related to" jurisdiction provided by Section 1334(b), these provisions ensure that bankruptcy courts are able to "centralize disputes over the debtor's assets and obligations in one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting judgments." *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015). For these reasons, the panel majority rightly applied settled precedent holding that staying litigation of identical claims against an indemnitee of the Debtor "could conceivably have any effect on the estate being administered in bankruptcy" and thus were within the scope of the bankruptcy court's jurisdiction. Op. at 13-14 (quoting *Pacor*, 743 F.2d at 994). Adopting a narrower reading of bankruptcy jurisdiction would frustrate the objectives of the Bankruptcy Code and harm the ability of debtors facing overwhelming tort liability to enter and emerge from chapter 11.

The panel majority was similarly correct in rejecting the argument that jurisdiction was "manufactured" in violation of 28 U.S.C. § 1359. Using corporate law in the way done in the specific circumstances before the Court no more manufactures jurisdiction than does incorporating in a State to do business or entering into *bona fide* contracts with customers. Indeed, the Texas divisional

merger statute is intended to have a neutral impact on creditors and has been used for over 30 years. *See* Curtis W. Huff, *The New Texas Business Corporation Act Merger Provisions*, 21 St. Mary's L.J. 109, 110 (1989). Other States have similar statutes allowing for divisional mergers. *See, e.g.*, 15 Pa. C.S. § 361; Ariz. Rev. Stat. Ann. § 29-2601; Del. Code Ann. tit. 6, § 18-217(b)-(c). A defendant using these laws to achieve legitimate business objectives is not collusive. And it is a particularly apt business decision with mass torts, especially asbestos, where forms of aggregate litigation "have limited utility in providing effective, timely, and final global resolution." *See* U.S. Chamber of Com. Inst. for Legal Reform, *Unlocking the Code: The Value of Bankruptcy to Resolve Mass Torts*, 30 (Dec. 2022).

This Court should reject Petitioners' effort to impugn the use of State corporate reorganizational laws as "collusive" merely because a corporation contemplates that a bankruptcy filing may follow restructuring. It is not collusive for a company to avail itself of State corporate law that permits a divisional merger, fund the Debtor emerging from a divisional merger in a manner that maximizes value for its creditors, and otherwise reorganize the company to meet its obligations and pursue the goals and objectives of the Bankruptcy Code. This is the essence of private ordering.

## CONCLUSION

For the above reasons, *amici curiae* the Chamber and ATRA respectfully submit that the Petitions for Rehearing should be denied.

July 24, 2023                                              Respectfully submitted,

                                                                    /s/ Ilana H. Eisenstein

Tara S. Morrissey                              Ilana H. Eisenstein
Janet Galeria                                        *Counsel of Record*
U.S. CHAMBER LITIGATION CENTER       DLA PIPER LLP (US)
1615 H Street, NW                            1650 Market Street, Suite 5000
Washington, D.C. 20062                    Philadelphia, PA 19103
                                                          Tel: 215.656.3351
Lauren Sheets Jarrell                        ilana.eisenstein@dlapiper.com
AMERICAN TORT REFORM ASSOCIATION
1101 Connecticut Ave NW, Suite 400    Richard A. Chesley
Washington, D.C. 20036                    DLA PIPER LLP (US)
                                                          444 West Lake Street, Suite 900
R. Craig Martin                                Chicago, IL 60606-0089
DLA PIPER LLP (US)
1201 N. Market Street, Suite 2100
Wilmington, DE 19801

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Court's type-volume limits because, excluding the portions of this document exempted by Fed. R. App. P. 32(f), this brief contains 2,578 words.

I further certify that this brief complies with the Court's typeface and style requirements because it has been prepared in 14-point Times New Roman, a proportionately spaced typeface, using Microsoft Word.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 24th day of July, 2023, the foregoing *Brief of* Amici Curiae *the Chamber of Commerce of the United States of America and the American Tort Reform Association in Support of Debtor and Plaintiffs-Appellees and in Opposition to Rehearing En Banc* was served on counsel of record for all parties via the Court's CM/ECF system.

Dated: July 24, 2023                      /s/ *Ilana H. Eisenstein*
                                                     Ilana H. Eisenstein